UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 4:21CR00536 AGF |
| v. ) | |
| ) | |
| KANIYA SLOAN, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## GUILTY-PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

**1.     PARTIES:**

The parties are the defendant KANIYA SLOAN, represented by defense counsel BRADLEY S. DEDE, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2.     GUILTY PLEA:**

**A.     The Plea:**     Pursuant to Rule 11(c)(1)(A), of the Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Count Two of the Indictment, the United States agrees to move for the dismissal as to the defendant of Count One at the time of sentencing. Moreover, the United States agrees that no further federal prosecution will be brought in this District relative to the defendant's violations of federal law, known to the United

Page **1** of **16**

States at this time, arising out of the events set forth in the Indictment.

  **B.** **The Sentence:** The parties agree that the recommendations contained herein fairly and accurately set forth some guidelines that may be applicable to this case. In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request. The parties understand that the Court is neither a party to nor bound by the Guidelines recommendations agreed to in this document.

**3.** **ELEMENTS:**

As to Count Two, the defendant admits to knowingly violating Title 18, United States Code, Section 7(3), Section 2111, and Section 3, and admits there is a factual basis for the plea and further fully understands that the elements of the crime of Accessory After the Fact of a Robbery on Federal Territorial Jurisdiction are as follows:

  **(i)** Beginning at or around September 13, 2021, through and including September 15, 2021, the defendant knowingly received, relieved, comforted and assisted another who had taken or attempted to take an item of value from the person and presence of another;

  **(ii)** That the taking of an item of value from the person and presence of another was accomplished by force and violence and/or by intimidation;

**(iii)** That the taking of an item of value from the person and presence of another occurred at a place within the special maritime and territorial jurisdiction of the United States, on land acquired for the use of the United States and under its concurrent jurisdiction;

**(iv)** That the defendant received, relieved, comforted and assisted the person who committed the robbery in order to hinder or prevent said person's apprehension, trial or punishment.

**4.    FACTS:**

The parties agree that the facts in this case are as follows and that the United States would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

On September 13, 2021, Saint Louis Metropolitan Police Department ("SLMPD") officers responded to a call for an armed robbery that occurred on the Gateway Arch National Park grounds at approximately 7:30 p.m. The Gateway Arch National Park is located within the Eastern District of Missouri, is a land reserved or acquired for the use of the United States, and is under the concurrent jurisdiction thereof. Officers spoke with a male and female victim (A.P. and S.S.), who reported that they were on the grounds of the Gateway Arch when they were approached by a male, with a low-cut hair style, wearing a black graphic t-shirt, grey sweatpants, and white tennis shoes. The victims stated that the suspect pointed a black handgun at them and demanded their property. The female victim complied with the demands of the male and give him her purse, which contained her social security card, passport, iPhone cellular phone, credit card, a Choice 2020 A.P. hockey card, and the key to her vehicle. The male victim also complied with the demands of the and gave the male his iPhone cellular phone, his wallet, which contained two credit cards, and a

driver's license. After the robbery, the suspect ran westbound toward the area of Memorial Drive and Chestnut Street.

SLMPD officers worked with the Federal Park Service to obtain and review surveillance footage from the area in an attempt to identify the suspect. During that review, officers observed a grey four-door sedan. Additionally, officers obtained state court authorization to locate the victims' stolen cell phones. The phones were tracked to an ECOATM inside a Walmart located at 1040 Collinsville Crossing Boulevard. The phones were sold to ECOATM on September 13, 2021, at 8:03 p.m., approximately 30 minutes after the robbery. While reviewing surveillance footage at the Walmart location, officers observed a grey sedan bearing Missouri License plate LF9-G5N pull into the parking lot. The vehicle was consistent with the vehicle observed on surveillance footage obtained near the robbery.

The Walmart surveillance footage showed three individuals exit the grey sedan. One of the individuals exiting the vehicle matched the victims' description of the robber and was later identified. This individual was determined to be a juvenile. The other individuals were later identified as the defendant and co-defendant Franklin. The three all went inside the Walmart and approached the ECOATM kiosk, with co-defendant Franklin approaching first, followed by the juvenile, and ultimately by the defendant. After co-defendant Franklin began tapping the screen to begin the transaction, the defendant then presented her identification at the kiosk, which was verified by a live agent employed by ECOATM. After verification, the defendant presented two cell phones in exchange for cash. The two phones were later identified as the same phones stolen from the victims on the Arch Grounds.

On September 15, 2021, officers successfully located the grey sedan, identified as a 2012

Honda Accord, at Broadway and Chouteau in the City of Saint Louis. Officers observed the vehicle circling the downtown area, committing numerous traffic violations. Once the vehicle was stopped, officers observed that driver was co-defendant Franklin, the front passenger was the defendant and in the rear seat on the driver's side, the juvenile. A search of the Honda Accord revealed a black Glock 19 handgun located on the floorboard where the juvenile had been seated. When officers found the gun, the juvenile spontaneously stated, "That's my dad's gun in the back seat." The defendant yelled at the juvenile to "shut up." An inventory search of the vehicle revealed a Choice 2020 A.P. hockey card that the female victim had said was taken from her purse the night of the robbery.

Officers interviewed co-defendant Franklin. Initially, he denied any involvement in the robbery, but after being confronted with a printed surveillance photo from the Walmart on September 13, 2021, later admitted that he drove the juvenile and the defendant to the downtown St. Louis area. He further admitted the juvenile had a gun, told co-defendant Franklin to stop the car near the Arch Grounds and then exited the vehicle with the gun. Co-defendant Franklin stated that the juvenile returned with a purse and two cell phones that he knew did not belong to the juvenile. Co-defendant Franklin said the juvenile told him to drive to Walmart to sell the stolen phones. Co-defendant Franklin admitted going to the Walmart in Collinsville, Illinois and stated that the defendant used her identification to sell the phones while he and the juvenile stood at the kiosk.

Officers also interviewed the defendant, who initially denied involvement in the robbery. However, after being confronted with a printed surveillance photo from the Walmart on September 13, 2021, the defendant later admitted that she and the juvenile and co-defendant Franklin were

driving in co-defendant Franklin's vehicle in the downtown area and that the juvenile had a gun. The defendant further stated that the juvenile got out of the vehicle with the gun and returned a short time later with two cell phones, which she knew did not belong to the juvenile. The defendant further stated that once the juvenile returned to the vehicle, co-defendant Franklin suggested selling the phones at a Walmart and asked the defendant if she would use her identification for the transaction.

A search of the defendant's cell phone revealed photographs of both victim's identification cards, as well as debit and credit cards belonging to the victim. The defendant's phone also contained messages where she told someone that she was in St. Louis and at Walmart on September 13, 2021. Geolocation data from the defendant's phone places her near the Arch during the robbery and near the Walmart where the victims' phones were sold after the robbery.

5. **STATUTORY PENALTIES:**

The defendant fully understands that the maximum possible penalty provided by law for the crime in Count Two of the Indictment, to which the defendant is pleading guilty, is imprisonment of not more than 7.5 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court shall also impose a period of supervised release of not more than three years.

In certain situations under Title 18, United States Code, Section 924(e)(Armed Career Criminal), the defendant may be subject to a mandatory minimum sentence of imprisonment of fifteen (15) years and a maximum of life, a fine of not more than $250,000, or both such imprisonment and fine, and a term of supervised release of not more than five years. The defendant is pleading guilty with full knowledge of these possibilities, has discussed these possibilities with

counsel and will not be able to withdraw the guilty plea if the Court determines the foregoing statute applies to the defendant's sentence.

6.  **U.S. SENTENCING GUIDELINES: 2018 MANUAL**

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

A.  **Chapter 2 Offense Conduct:**

i.  **Base Offense Level:** The parties agree that the Base Offense Level for both counts is **20**, as found in Section 2B3.1(a). The Base Offense Level may also be determined under Section 4B1.4 if the defendant is determined to be an Armed Career Criminal.

ii.  **Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply: Under Section 2B3.1(b)(2)(B), **six (6)** levels shall be added because a firearm was used during the robbery.

Under Section 2X3.1, **six (6)** levels shall be deducted because the defendant acted as an accessory after the fact to the robbery.

B.  **Chapter 3 Adjustments:**

i.  **Acceptance of Responsibility:** The parties recommend that two levels should be deducted pursuant to Sentencing Guidelines Section 3E1.1(a) because the defendant has clearly demonstrated acceptance of responsibility. If the deduction pursuant to Sentencing Guidelines Section 3E1.1(a) is applied, then the United States moves to deduct one additional level pursuant to Sentencing Guidelines Section 3E1.1(b)(2), because the defendant timely notified

authorities of the intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

The parties agree that if the defendant does not abide by all of the agreements made within this document, the defendant's failure to comply is grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1. The parties further agree that the defendant's eligibility for a reduction pursuant to Sentencing Guidelines Section 3E1.1 is based upon the information known at the present time and that any actions of the defendant which occur or which become known to the United States subsequent to this agreement and are inconsistent with the defendant's acceptance of responsibility including, but not limited to criminal conduct, are grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1. In any event, the parties agree that all of the remaining provisions of this agreement remain valid and in full force and effect.

    **ii.** **Other Adjustments:** Under Section 3B1.4, **two (2)** levels could be added because the defendant used a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense. The defendant objects to the application of this enhancement.

  **C.** **Estimated Total Offense Level:** The parties agree that the Total Offense Level for Count Two is either **17** or **19**, depending on whether this Court applies the enhancement under Section 3B1.4, unless the defendant is a Career Offender. Depending on the underlying offense and the defendant's criminal history, the defendant could be Career Offender pursuant to Section 4B1.1. If the Court finds Defendant to be a Career Offender, the advisory Total Offense Level, with a 3-level reduction of responsibility taken into account, will be a Level **26** on Count Two,

with a Criminal History Category score of VI. The defendant has discussed these possibilities with defense counsel. Both parties reserve the right to argue that the defendant is or is not a Career Offender.

**D.** **Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**E.** **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement. The Government recognizes it is bound by the specific agreements made above but reserves the right to answer any questions the U.S. Probation Office or the Court might have related to sentencing or present evidence at the Court's request.

**7.** **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

**A.** **Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**i.** **Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is

pleading guilty, and whether the defendant's conduct falls within the scope of the statue(s).

      **ii.**    **Sentencing Issues:** In light of the Government's agreement that no further federal prosecution will be brought in this District relative to the underlying facts supporting the charges herein, in the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History. Similarly, the United States hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above the determined Sentencing Guidelines range.

    **B.**    **Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

    **C.**    **Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

8. **OTHER:**

   A. **Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the United States.

   B. **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

   C. **Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime the defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

   D. **Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

   E. **Possibility of Detention:** The defendant may be subject to immediate detention

pursuant to the provisions of Title 18, United States Code, Section 3143.

**F.** **Fines and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration, and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. The defendant further understands and agrees that any fine or restitution imposed by the Court serves as a lien in favor of the United States against all the defendant's property and rights to property pursuant to 18 U.S.C. § 3613(c), and that the United States may immediately enforce any imposition of a fine or restitution pursuant to 18 U.S.C. § 3613(a). If the Court imposes a schedule of payments, the defendant agrees that it is a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset.

Pursuant to 18 U.S.C. § 3663A(a)(1), an order of restitution is mandatory for all crimes listed in 18 U.S.C. § 3663A(c). An offense listed in Section 3663A gave rise to this plea agreement. Regardless of the count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by 18 U.S.C. § 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges contained in the indictment or information, without regard to the counts to which the defendant actually pleads.

The defendant agrees to pay restitution to all victims listed in the restitution questionnaire in the total amount of $ 7,026.65, pursuant to 18 U.S.C. §§ 3663(a)(3) and 3663A. The defendant

understands that the Court has an obligation to determine whether, and in what amount, restitution applies in this case under 18 U.S.C. § 3663 and 18 U.S.C. § 3663A. The defendant agrees this may include restitution for all losses caused by the defendant's criminal conduct, even if such losses resulted from crimes not charged or admitted by the defendant in Section 4 (labeled "FACTS") *supra*.

       **G.**    **Forfeiture:**  The defendant agrees to forfeit all of the defendant's interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant admits that all United States currency, weapons, property, and assets seized by law enforcement officials during their investigation constitute the proceeds of the defendant's illegal activity, were commingled with illegal proceeds, or were used to facilitate the illegal activity. The defendant agrees to execute any documents and take all steps needed to transfer title or ownership of said items to the United States and to rebut the claims of nominees and/or alleged third party owners. The defendant further agrees that said items may be disposed of by law enforcement officials in any manner.

**9.**    **ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the United States to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right

to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the United States' evidence and discussed the United States' case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the United States' case and any defenses.

The guilty plea could impact the defendant's immigration status or result in deportation. In particular, if any crime to which the defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

10. **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the defendant and the United

States, and no other promises or inducements have been made, directly or indirectly, by any agent of the United States, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if the defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The United States may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the United States agrees to dismiss or not to bring.

10/27/2022
Date

_____
CATHERINE M. HOAG
Assistant United States Attorney

10-27-22
Date

_____
KANIYA SLOAN
Defendant

10-27-22
Date

_____
BRADLEY S. DEDE
Attorney for Defendant

Page **16** of **16**